**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| SARAH L. SINGLETON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-3139-MBS-JRM |
| ) | |
| v. ) | |
| ) | |
| TIME WARNER ENTERTAINMENT ) | **REPORT AND RECOMMENDATION** |
| ADVANCE-NEWHOUSE ) | |
| PARTNERSHIP d/b/a TIME WARNER ) | |
| CABLE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, Sara L. Singleton ("Singleton"), filed this action on December 3, 2009, alleging that her former employer, Time Warner Entertainment Advance/Newhouse Partnership, d/b/a Timer Warner Cable ("Time Warner"), discriminated against her because of her race in violation of Title VII (42 U.S.C. § 2000e, *et seq.*), and her age in violation of the Age Discrimination in Employment Act (23 U.S.C. § 206(d)) ("ADEA") when it refused to hire her for a new position following a corporate reorganization. Time Warner filed a motion for summary judgment on May 16, 2011. Singleton filed a memorandum in opposition on June 14, 2011. Time Warner filed a reply on July 1, 2011.

## **Standard for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Anderson, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson, 477 U.S. at 247-48).

"[O]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c) (1)(A-B).

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Servs. Co.</u>, 80 F.3d 954 (4th Cir. 1996). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1-4).

**Facts**

The facts, either undisputed, or according to the Plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Singleton is an African American who was 60 years of age when she filed her complaint. (Complaint, ¶ 4).

2. Singleton began working for Time Warner as a Sales Operation Center Service Representative in Columbia in March of 2003. (Pl.Dep., p. 22).

3. In July of 2004, Singleton was promoted to Business Class Sales Assistant where she was supervised by Anthony "Jay" Campbell ("Campbell"). (Pl.Dep., p. 24).

4. Singleton was an excellent employee who received consistently favorable employment reviews and pay raises. (Pl.Mem., Exs. C-F).

5. In October of 2007 Singleton completed Time Warner's Skills Development Program. (Pl.Dep., p. 27).

6. Time Warner began a corporate reorganization in 2007 which resulted in moving its Commercial Services Department which included Singleton's position to Charlotte, North Carolina. Singleton was offered the opportunity to transfer to Charlotte, but she declined. (Bailey Aff., ¶¶ 6-8).

7. Time Warner created a new Telesales Department in Columbia and Campbell was named its Operations Manager in February of 2008.

8. In April 2008, Time Warner posted openings for ten Telesales Support Specialist positions in the new department. Campbell encouraged Singleton to apply for one of the new positions. (Campbell Aff., ¶¶ 9-10).

9. Singleton was paid $17.06 per hour as a Business Class Sales Assistant. According to Singleton, Campbell promised her one of the Telesales Support Specialist positions at the same pay. (Pl.Dep., pp. 50-51).[1]

10. Singleton applied for and was interviewed by Campbell for one of the Telesales Support Specialist positions. (Pl.Dep., p. 59).

11. According to Campbell, Singleton was dissatisfied with any rate less than $17.06 per hour and asked him to pursue making sure that she would not be paid less in her new position. Campbell discussed Singleton's situation with Andrea Wilson ("Wilson")

---

[1] Campbell denies making Singleton such a promise. According to him, he initially told Singleton that he thought the pay would be only $16.00 per hour. (Campbell Aff., ¶ 11). Eventually, it was decided that the Telesales Support Specialist positions would make $14.50 per hour. (Campbell Aff., ¶ 16).

who would have been Singleton's direct supervisor. Campbell and Wilson shared disappointment with Singleton's demands for higher pay than the new position allowed. They were concerned as to whether Singleton would accept the lower pay and that Singleton would be difficult to manage which would negatively affect morale in the Telesales Department. (Campbell Aff., ¶ 17).

12. Singleton was not offered the new position. (Campbell Aff., ¶ 19).

13. Singleton's position as a Business Class Sales Assistant (and her employment with Time Warner) ended on May 8, 2008.

14. After learning that she was not going to be offered one of the new positions, Singleton spoke with Rose Bailey ("Bailey"), Time Warner's Director of Human Resources. Bailey discussed Singleton with Campbell and followed up with telling her that she understood why Singleton had not been offered one of the 10 positions. (Bailey Aff., ¶¶ 13-14).

15. Of the ten individuals who were hired to fill the ten positions for which Singleton applied, three were African-Americans and two were over the age of forty, one being older than Singleton. (Bailey Supp.Aff., ¶ 3).

16. Singleton filed a charge of discrimination with the EEOC on February 4, 2008.

## Discussion

**1. Disparate Treatment**

Singleton states claims for race discrimination (Title VII) and age discrimination (ADEA) based on Time Warner's failure to hire her for one of the ten Telesales Support Specialist positions for which she applied. The parties appear to agree that Singleton has produced no direct evidence

5

of discriminatory animus on the part of Time Warner, and that the McDonnell Douglas[2] pretext framework is the proper method for analyzing Singleton's disparate treatment claims. (Pl.Mem., p. 11 and Def.Mem., p. 10). In a disparate treatment case the plaintiff must prove that "but for" her protected characteristic, here race and age, that she would not have been subjected to an adverse employment action.

In order to establish a prima facie case of discriminatory failure to hire or promote, plaintiff is required to prove that:

1. she is a member of a protected group;

2. she applied for the position in question;

3. she was qualified for the position; and

4. she was rejected for the position in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination.

Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991). The burden of establishing a prima facie case is not an onerous one. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, non-discriminatory reason for the challenged employment decision. McDonnell Douglas, 411 U.S. at 802. By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

defendant to come forward with some response." St. Mary's Center v. Hicks, 509 U.S. 502, 510-11 (1993). The plaintiff may then only prevail by persuading the factfinder that the employer's articulated reason was merely pretextual and that unlawful discrimination had a determinative influence on the employer's decision. Hazen Paper Company v. Biggins, 507 U.S. 604, 610 (1993).

This three-step proof scheme has been adapted to motions for summary judgment. Mitchell v. Data General Corporation, 12 F.3d 1310, 1315-16 (4th Cir. 1993). When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Id.* (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., *supra*. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d at 1316; DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987); Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

**2. Prima Facie Case**

Time Warner concedes that Singleton has met the first three elements of her prima facie case. However, Time Warner argues that Singleton has not shown that she was not hired under circumstances that give rise to an inference of discrimination. (Def.Mem., p. 11). Time Warner initially argues that Singleton's claims are precluded by her deposition testimony. The transcript shows:

> Q. Do you have any facts that suggest you didn't receive the position other than the dispute over how much you were going to be paid?
>
> A. No.
>
> (Pl.Dep., 98).

However, Time Warner ignores Singleton's earlier deposition testimony:

> Q. Are you claiming that Time Warner discriminated against you based on your race based on this lawsuit?
>
> A. It appears that way.
>
> Q. Is that a yes or a no?
>
> A. Yes.
>
> Q. What facts do you have to support your belief that is appears that way?
>
> A. I was not given the position which I was highly qualified for, and instead my co-worker got the position who was less qualified.
>
> Q. And what co-worker are you referring to?
>
> A. Julie Caulder.

(Pl.Dep., p. 92).

Singleton argues that she was better qualified than at least one of the ten individuals, Julie Caulder ("Caulder"), who was hired by Time Warner as Telesales Support Specialist. Singleton testified at her deposition that she had far more experience than Caulder and actually trained Caulder when she became a Business Class Sales Assistant. Further Singleton had a college degree and had completed Time Warner's Skills Development program while Caulder had not. (Pl.Dep., 153-155; 162-163). Caulder is Caucasian and at the time of Singleton's deposition was in her late twenties. (Pl.Dep., pp. 163-164).

Time Warner does not dispute Singleton's argument with respect to Caulder's age and lack of qualifications. Instead, Time Warner argues (1) there was more than one position to be filled and, therefore, the decision to hire Caulder had no relation to the decision not to hire Singleton, and (2) Time Warner did not make its decision based on a comparison of their relative qualifications. (Def.

Reply Mem., p. 6). For these reasons, Time Warner asserts that Singleton has failed to establish a prima facie case of race and age discrimination.

The undersigned disagrees. Given the low threshold for establishing a prima facie case and the undisputed fact that Caulder was substantially younger and less qualified than Singleton, the undersigned concludes that in the light most favorable to Singleton, she has established a prima facie case of race and age discrimination.

### 3. Pretext

Time Warner further argues that it has proffered a legitimate, non-discriminatory reason for its decision not to hire Singleton, i.e., "Time Warner decided not to offer Plaintiff a Telesales position only because of Plaintiff's dissatisfaction with how much she would be paid in that position." (Def.Mem., p. 15) (emphasis in original).

The parties agree that before the corporate reorganization which led to moving the Commercial Services Department to North Carolina in 2007, Singleton was a valuable employee who performed well and displayed a good attitude. They paint different pictures of Singleton concerning her reaction to the lower pay associated with the Telesales Support Specialist position. According to Campbell,

> 11. I initially told Ms. Singleton that I believed the maximum the position would pay would be only $16.00 per hour, less than her current pay rate of $17.07 per hour.
>
> 12. Ms. Singleton was extremely disappointed and did not want to take a pay cut. She demanded that I try to convince the Company to offer her a position at $17.07 per hour, and she refused to answer whether she would be willing to work in a Telesales Support Specialist position at $16.00 per hour.
>
> 13. Ms. Singleton continued to push the issue and even went so far as to suggest to me that Time Warner should hold off on filling two of the Telesales Support Specialist openings so that the Company could afford to make a special exception and

pay Ms. Singleton her current pay rate of $17.07 per hour (more than any other employee that would be working in the position.)

14. I was disappointed with Ms. Singleton's poor attitude and very concerned that she would not be satisfied working in a lower-paying position.

15. Despite my disappointment, I went to my supervisor, Kevin Bush, Senior Director of Inbound Sales, to see if Ms. Singleton's demand could be accommodated. Mr. Bush explained to me that the Company could not make a special exception for Ms. Singleton. In fact, I felt as though I was putting my own job as a new manager on the line by continuing to press the issue with upper management.

16. Shortly before the Company began filling the Telesales positions, the Human Resources department informed me that the maximum amount the Company would pay for the position would not be $16.00 per hour, but only $14.50 per hour. I again went to Mr. Bush to discuss the Telesales Support Specialist pay rate due to my concern that Ms. Singleton and other candidates would not be willing to work in the positions at $14.50 per hour. After further discussions with Mr. Bush and myself, the Human Resources department confirmed that the most the Company would pay for the position was $14.50 per hour.

17. I discussed Ms. Singleton with Andrea Wilson, the Telesales Supervisor who would have directly supervised Ms. Singleton in a Telesales position. Specifically, we discussed Ms. Singleton's poor attitude and her refusal to indicate whether she would be willing to work in a Telesales position at $16.00 per hour, as well as Ms. Singleton's suggestion that Time Warner hold off on filling several of the openings in order to pay Ms. Singleton more money. Ms. Wilson expressed to me her disappointment with Ms. Singleton and her concern that if Ms. Singleton were to accept the position at the $14.50 pay rate, she would be dissatisfied with the pay, would be difficult to manage, and could negatively affect morale in the new department. I shared these concerns given my prior experience supervising an employee who had taken a lower-paying position.

(Campbell Aff., ¶¶ 11-17).

However, according to Singleton, Campbell initially promised her a job as a Telesales Support Specialist which would be a "lateral transfer with my same salary." (Pl.Dep., p. 51). During this period, Singleton talked with Campbell in person and communicated by email. (Pl.Dep., p. 53). Campbell continued to assure Singleton that she would get one of the new positions. (Pl.Dep., p. 54). Campbell sent Singleton an email alerting her that the positions had been posted, and she applied.

11

(Pl.Dep., pp. 55-56). Campbell interviewed Singleton for the job and told her the interview was a formality. (Pl.Dep., pp. 56-57). On the day of the interview Campbell also told Singleton that she would be a lateral transfer but would not be at the top of the pay grade for the position. (Pl.Dep., p. 59). Further according to Singleton, the issue of pay for the new position was first explicitly discussed in mid-April of 2008, after she was interviewed by Campbell. By email, Campbell advised Singleton that the pay rate was not $17.07 per hour "but he knew he could get me $16 per hour." Singleton testified that "I told him that he promised me a lateral transfer, and that I would be disappointed if that didn't materialize." (Pl.Dep., pp. 62-63). Campbell then advised Singleton that she could negotiate for $16.50. (Pl.Dep., p. 63). Singleton testified that at that point she had no reason to get back with Campbell, and did not hear from him until she found out she did not get one of the positions. (Pl.Dep., p. 65). However, later in the deposition Singleton recalled suggesting to Campbell that he delay bringing in two of the new employees to save enough money to be used in paying her the rate she wanted. (Pl.Dep., p. 73).

As stated above, Time Warner argues the only reasons that it did not offer Singleton the job as Telesales Support Specialist was her dissatisfaction with the proposed hourly wage. Campbell and Bush were concerned that if Singleton accepted the lower rate of pay, she would remain dissatisfied and would be difficult to manage. (Campbell Aff., ¶ 17). Under the <u>McDonnell Douglas</u> burden shifting framework, it is Singleton's burden to prove by a preponderance of the evidence that Time Warner's reasons are a pretext for discrimination. She may do this by showing that the reasons proffered are false or unworthy of belief. However, Singleton may not simply substitute her business judgment for that of Time Warner's. <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 143 (2000).

Singleton has not produced sufficient evidence to show that the reason proffered by Time Warner was false or unworthy of belief. Even though Singleton's version of how she reacted to the news that she would be paid at a lower rate as a Telesales Support Specialist differs significantly in degree from that of Campbell, Singleton admitted in her deposition that she was disappointed at the news and expressed that disappointment to Campbell. Singleton also showed the depth of her concern when she suggested to Campbell that he delay bringing two employees into the new department to free up enough money so that Time Warner could meet her salary demands. Campbell reluctantly discussed Singleton's demands to his supervisor who rejected them. (Campbell Aff., ¶ 15). Singleton's admissions show that she was concerned enough over the pay differential that she suggested an unconventional solution that would have been disruptive in hiring the full compliment of employees to fill the new positions. Therefore, the undersigned concludes that Singleton has not met her burden of proof at the pretext stage of the McDonnell Douglas analysis.

**4. Contract Claims**

Singleton alleges that Campbell's assurances to her that she would be hired as a Telesales Support Specialist created a binding contract which Time Warner breeched when she was not hired. Singleton further alleges that Time Warner had a fraudulent intent in breaching the contract with her.

"South Carolina recognizes the doctrine of employment at-will." Nelson v. Charleston County Parks & Recreation Commission, 362 S.C. 1, 605 S.E.2d 744, 746 (Ct.App. 2004). At-will employment is presumed absent the creation of a specific contract of employment. Prescott v. Farmers Tel.Co-op., 335 S.C. 330, 516. S.E.2d 923, 925-926 (1999). Such employment relationships are terminable by the employer or employee for any reason. Certain exceptions to the at-will employment rule are recognized by the South Carolina courts. At-will employees may not be

terminated in violation of public policy or for exercising constitutional rights. Further, an employee has a cause of action where the at-will employment relationship has been contractually altered, for example by statements in an employee handbook. Nelson, 605 S.E. 2d at 746.

Time Warner operates under a written "Employment-At-Will Policy." In March of 2005, Singleton signed a copy of Time Warner's policy which states:

1. Except for those few individuals who have a written contract of employment with the Company, all employees of the Company are hired for an indefinite period of time and are "at-will" employees.

2. "At-will" employees are free to terminate their employment with the Company at any time.

3. Similarly, the Company retains the legal right to terminate the compensation and the employment of any "at-will" employee, at any time, for any reason, with or without cause, and with or without notice.

4. No supervisor or other member of the management of the Company other than the Chairman of the Board and Chief Executive Officer, Vice Chairman, or President of the Company has any authority to enter into an agreement with an employee for employment for a specified period of time or to make any agreement contrary to this employment at-will policy.

5. Any agreement with a regular employee for employment for a specified period of time, or for employment which is other than terminable "at-will," is not valid unless in writing and signed by the Chief Executive Officer, the Vice Chairman, the President, or the General Counsel of the Company. In certain cases, any one of these four officers may provide written authorization for a corporate officer, the Corporate Vice-President of Human Resources, or a Division President to sign such an agreement.

(Def.Mem., Ex. 4).

The parties have made copious arguments about whether Singleton was an at-will employee. In a sense, these arguments miss the mark. Singleton does not allege that Time Warner breached a

14

contract by terminating her. She alleges that Time Warner offered her an employment contract as a Telesales Support Specialist and breached the contract once it was formed. Singleton's claims fail under standard contract principles.

"The necessary elements of a contract are an offer, acceptance, and valuable consideration." Plantation A.D., LLC v. Gerald Builders of Conway, Inc., 386 S.C. 198, 687 S.E.2d 714, 718 (Ct.App. 2009) quoting Roberts v. Gaskins, 327 S.C. 478, 486 S.E.2d 771, 773 (Ct.App. 1997). "In order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement." Mathis v. Brown & Brown of South Carolina, Inc., 389 S.C. 299, 698 S.E.2d 773, 778 (2010) quoting Davis v. Greenwood School District 50, 365 S.C. 629, 620 S.E.2d 65, 67 (2005).

Singleton's contract claims fail because none of these necessary elements are met. Time Warner did not offer Singleton a position as Telesales Support Specialist. Singleton alleges that Campbell's communications to her constituted an offer for the position. However, Campbell had no authority to make an offer to Singleton any contract "for a specified period of time or to make any agreement contrary to [Time Warner's] employment at-will policy." (Def.Mem., Ex. 4). Singleton acknowledged that such agreements could only be made by high ranking Time Warner executives when she signed the employment at-will policy in March of 2005. *(Id.)* Further, Singleton never indicated to Campbell or anyone else that she would accept the position. Last, the communications concerning the rate of pay for the new position between Singleton and Campbell show there was no meeting of the minds as to the hourly rate or the duration of the alleged contract. Ultimately, the hourly rate was not set by Campbell, but by Time Warner. None of the individuals hired were paid over $14.50 per hour. (Bailey Aff., ¶ 15).

15

**5. Tort Claim**

Singleton alleges that Time Warner negligently failed to supervise Campbell. She correctly asserts, citing Degenhart v. Knights of Columbus, 309 S.C. 114, 420 S.E.2d 495, 496 (1992), that the South Carolina "Supreme Court has held that an employer is under a duty in some circumstances to control an employee acting outside the scope of employment." (Pl.Mem., p. 26). "Degenhart found that an employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is on the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control." Charleston S.C. Registry For Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP, 359 S.C. 635, 598 S.E.2d 717, 723-724 (2004), citing Degenhart, 420 S.E.2d at 496. Singleton argues that Time Warner "should have prevented or attempted to prevent Campbell, an agent of Defendant, from making promises of employment to Plaintiff if Campbell did not have the proper authority to do so...." (Pl.Mem., p. 27). Campbell was acting within the scope of his employment by interviewing applicants for the Telesales Support Specialist positions. Assuming that Campbell was making promises that violated Time Warner's policies, Singleton has not shown that his supervisors or Time Warner had any knowledge of the promises to Singleton until after the positions were already filled. The record reflects only that Campbell discussed Singleton's demands for higher pay with his supervisors who rejected the idea.

## Conclusion

Based on a review of the record, it is recommended that Defendant's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

February 9, 2012