IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sarah L. Singleton, ) | C/A No. 3:09-cv-3139-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Time Warner Entertainment ) | |
| Advance-Newhouse Partnership ) | |
| d/b/a Time Warner Cable, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Sara Singleton ("Plaintiff") filed a complaint against her former employer, Defendant Time Warner Entertainment Advance-Newhouse Partnership ("Defendant"), alleging that she was terminated from employment because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) et seq.; and because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 23 U.S.C. § 206(d). In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling.

**Factual Background**

The facts, either undisputed or construed in favor of Plaintiff, are as follows. Plaintiff is an African American woman and was sixty years old when she filed the instant action. Plaintiff began working for Defendant as a Sales Operation Center Service Representative in Columbia, South Carolina in March 2003. In July 2004, Plaintiff was promoted to Business Class Sales Assistant where she was supervised by Anthony "Jay" Campbell ("Campbell"). Plaintiff was an excellent employee who consistently received favorable employment reviews. In 2004, after receiving a positive employment review, Plaintiff indicated to Campbell that she was not

satisfied with the percentage raise she had received. In 2006, Plaintiff also received a positive employment review and indicated to Campbell that she was not satisfied with the raise she had received in that review period either. In October 2007, Plaintiff completed Defendant's Skills Development Program. In 2007, Defendant also began a corporate reorganization, which resulted in the Commercial Services Department, of which Plaintiff was a part, to be moved to Charlotte, North Carolina. Plaintiff was offered the opportunity to transfer to Charlotte and keep her position, including her level of pay. Plaintiff declined the opportunity and remained in her current position in Columbia, South Carolina, until the reorganization was complete. At that time, Plaintiff was receiving $17.06 per hour in her position as a Business Class Sales Assistant.

In February 2008, Defendant created a new Telesales Department in the Columbia office. Campbell was appointed to be the Operations Manager of this department. Plaintiff alleges that Campbell promised her that he would bring her over to his new department. Lydia Overton, another employee who worked with Plaintiff, also testified that Campbell had promised to bring Plaintiff and her into his department. Plaintiff alleges that Campbell repeatedly assured her that she would have a position in his new department. Furthermore, Plaintiff alleges that in February 2008, Campbell promised her a "lateral salary transfer" to the new position, indicating that she would receive the same salary that she held at the time. In April 2008, Defendant posted openings for ten Telesales Support Specialist positions in the new department. Campbell encouraged Plaintiff to apply for one of the new positions. Plaintiff interviewed with Campbell for the position. Plaintiff alleges that Campbell did not talk to her about salary in the interview. Plaintiff alleges that in mid-April 2008, Campbell instant messaged her and indicated that he knew he would be able to get her $16.00 per hour for the position, but was not sure if he could get her $17.00 per hour, close to her current salary, for the position. He indicated that when she

got her contract for $16.00, she could counter it for $16.50 and see what happened. Plaintiff responded to Campbell stating that he promised her a lateral salary transfer and that she would be disappointed if it did not materialize. Plaintiff states that Campbell responded to her reiterating that he knew he could get $16.00 but that once she got the contract, she should counter it for $16.50 and see what happened. Plaintiff emailed Campbell at some point in this correspondence asking him to do whatever he could to get the lateral salary transfer and that Campbell agreed. Plaintiff also recalls suggesting to Campbell that he could delay bringing in two of the new employees into his department to save enough money to provide Plaintiff with her desired salary. (Pl. Dep. 61-63, 73).

Campbell testified that after speaking with Plaintiff about her salary concern, Defendant's human resources recruiter informed him that Defendant was grading the telesales support specialist job to a lower salary level and that the maximum Campbell could offer anyone for the position was $14.50, regardless of experience. It is unclear when this development occurred. Campbell alleges that he pleaded with the human resources recruiter to change the salary level, but that he was unsuccessful. Campbell testified that, based on indications of how passionate Plaintiff was about getting a lateral salary transfer, he did not think she would be willing to accept $14.50. Campbell also testified that, based on his experience in similar situations, even if Plaintiff were to accept, he was concerned that arguments in the workplace would arise because of her dissatisfaction with the salary.

On May 15, 2008, Kevin Bush, Campbell's supervisor, emailed him, saying "Lets talk but it looks like we should offer Sarah [Plaintiff] at the same rate as we brought Julie over and have her officially decline. Work with Clint on the details for the offer." ECF No. 48-12. Campbell testified that he was ultimately instructed not to contact Plaintiff to continue

negotiating salary. Plaintiff was not offered the position and Plaintiff's position as a Business Class Sales Assistant ended on May 8, 2008. Of the ten individuals who were hired to fill the ten positions for which Plaintiff applied, three were African-Americans and two were over the age of forty. One of these individuals was Julie Caulder, a white female under the age of forty, who had less experience and education than Plaintiff.

Subsequently, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On September 15, 2009, Plaintiff was issued a notice of right to sue letter by the EEOC. On December 3, 2009, Plaintiff filed the instant action. On December 16, 2009, Plaintiff filed an amended complaint. Plaintiff alleged in her complaint causes of action for discrimination under Title VII and the ADEA; breach of contract; fraudulent breach of contract; and negligent supervision. On May 16, 2011, Defendant filed a motion for summary judgment. Plaintiff responded on June 14, 2011, to which Defendant filed a reply brief on July 1, 2011. On February 9, 2012, the Magistrate Judge filed a Report and Recommendation in which he recommended granting Defendant's motion for summary judgment. On February 24, 3012, Plaintiff filed objections to the Report and Recommendation, to which Defendant filed a reply brief on March 19, 2012, after receiving an extension of time from the court.

## Discussion

### *Standard of Review*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made. The court may accept, reject, or modify, in

4

whole or in part, the findings or recommendations made by the Magistrate Judge. The court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

Under the McDonnell-Douglas framework, in order for Plaintiff to succeed in a Title VII discriminatory termination case, Plaintiff must first establish a prima facie case by offering proof that 1) she was a member of a protected class; 2) she was performing her job in a satisfactory manner; 3) she was subjected to an adverse employment action; and 4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. See McDonnell Douglas v. Green, 411 U.S. 792 (1973). Once Plaintiff has established a prima facie case of disparate treatment, Defendant has the burden of production as to articulating a legitimate non-discriminatory reason for the termination. Id. at 802.

If Defendant produces such a reason, the burden shifts back to Plaintiff to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination. Burgess v. Bowen, No. 10-2081, 2012 WL 517190, at *4 (4th Cir. Feb. 17, 2012). It is at this stage that Plaintiff's burden merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. See Texas Dep't of Community

5

Affairs v. Burdine, 450 U.S. 248, 256 (1981). If Plaintiff can demonstrate that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination, summary judgment is not appropriate. See id. at 253. In demonstrating that Defendant's articulated reason is a false reason, Plaintiff cannot simply substitute her business judgment for that of Defendant. See Jiminez v. Mary Washington College, 57 F.3d 369, 383 (4th Cir. 1995). A prima facie case of discrimination, combined with evidence from which a jury could conclude that an employer's proffered justification was false, could support an inference of discrimination sufficient to defeat summary judgment. See Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 147-48 (2000).

*Analysis*

The Magistrate Judge's Findings

The Magistrate Judge found that Plaintiff established a prima facie case for race and age discrimination. The Magistrate Judge found that Defendant sufficiently articulated a legitimate non-discriminatory reason for not hiring Plaintiff – Plaintiff's dissatisfaction with how much she would be paid in the position. The Magistrate Judge found that Plaintiff had not produced sufficient evidence to show that the reason proffered by Defendant was a pretext for discriminatory intent. The Magistrate Judge noted that Plaintiff's version of the facts, including how she reacted to the news that the telesales position had a lower salary, is significantly different from Defendant's version of the facts. Nonetheless, the fact that Plaintiff admitted in her deposition that she had expressed to Campbell disappointment with the lower salary and suggested to Campbell that he could delay hiring two employees in order to maintain Plaintiff's salary level, supports Defendant's articulated reason for not hiring her. Further, the Magistrate Judge noted that Plaintiff could not sufficiently rebut Defendant's articulated reason by

substituting her business judgment for Defendant's business judgment. Accordingly, the Magistrate Judge found that Plaintiff had not sufficiently demonstrated pretext.

Next, the Magistrate Judge found that Plaintiff's contract claims fail because the necessary elements of a contract are not met; specifically offer, acceptance, mutual assent, and consideration. The Magistrate Judge noted that although Plaintiff alleged Campbell's communications to her constituted an offer for the position, Campbell had no actual or apparent authority to make any agreement with Plaintiff contrary to Defendant's at-will employment policy. Furthermore, the Magistrate Judge found that there was no mutual assent as to the hourly rate or duration of the alleged employment contract, and that Plaintiff never indicated that she would accept a specific offer that was actually made to her.

Lastly, the Magistrate Judge found that Plaintiff's negligent supervision claim failed. The Magistrate Judge noted that a claim for negligent supervision requires Plaintiff to show that Defendant knew or had reason to know that one of its employees was acting outside the scope of his authority and needed to be controlled. The Magistrate Judge noted that the record reflected only that Campbell discussed Plaintiff's demands for higher pay with his supervisors, who rejected the idea. Accordingly, the Magistrate Judge found that Plaintiff's claim failed because she presented no evidence that Defendant had knowledge of the promises Campbell was making to Plaintiff, until after the positions were already fulfilled.

<u>Plaintiff's Objections</u>

Plaintiff objects to the Magistrate Judge's finding that she has not sufficiently shown that Defendant's articulated reason for not hiring her was pretextual. Plaintiff contends that Defendant's articulated reason is a false reason. Plaintiff states that she never refused to accept a position as a telesales support specialist and that she did not affirmatively state that she would

7

not accept the salary that was being offered. Further, Plaintiff alleges that she only attempted to negotiate a higher salary after Campbell had suggested she counter the offer of $16.00 per hour with a higher amount. Furthermore, Plaintiff states that she was consistently a top performer in her department and had been revered by Campbell himself. Plaintiff alleges that it not plausible that Campbell, who held Plaintiff in such high regard, would have made an adverse employment decision based upon one alleged instance where Defendant claims Plaintiff reacted poorly to the offered salary. Furthermore, Plaintiff alleges that it is not plausible that Defendant and Campbell would fault Plaintiff for attempting to negotiate a better salary when she had been advised by Campbell to do so. Lastly, Plaintiff argues that in light of the evidence above and the fact that one of the individuals hired for the telesales position was a younger white woman, who had less experience than Plaintiff had, a fact-finder could conclude that Defendant's articulated reason for not hiring Plaintiff was a pretext for discriminatory intent.

  Plaintiff's objection is without merit. The court agrees with the Magistrate Judge's finding that Plaintiff cannot prove pretext by substituting her own business judgment for that of Defendant's. While Campbell did encourage Plaintiff to counter an offer of $16.00 per hour with $16.50, Plaintiff's initial response was not that she would heed his suggestion. Rather, it was that she would be disappointed if Campbell could not provide her with her current salary, which was approximately $17.00 per hour. Furthermore, Plaintiff suggested to Defendant that he could delay the hiring of two employees, which would provide extra funding to compensate Plaintiff at her desired salary. Furthermore, in 2004 and 2006, Plaintiff had expressed that she was unhappy with the percentage raises she had received. Regardless of the fact that Plaintiff never affirmatively stated she would be unwilling to accept a salary less than $17.00 per hour, there is ample evidence in the record to support Defendant's feeling that Plaintiff would be

8

dissatisfied with $14.50 per hour and difficult to manage as a result.  Furthermore, a finding that Defendant's articulated reason was a pretext for discriminatory intent is undercut by the fact that Plaintiff was offered the opportunity to transfer to the Charlotte office with the same position and pay, and declined the offer.  Accordingly, Plaintiff has not demonstrated that there is a genuine issue of material fact as to whether Defendant's articulated reason was a pretext for discrimination.

Second, Plaintiff objects to the Magistrate Judge's finding that she failed to establish a valid claim for breach of contract or breach of contract accompanied by a fraudulent act.  Plaintiff contends that Campbell's promise fulfilled the three requirements of a unilateral contract, including: the existence of a specific offer, communication of the offer to the employee, and performance of job duties in reliance on the offer.  Plaintiff contends that Campbell provided her with an offer of a lateral salary transfer into the new position; he communicated that offer to her with no indication he did not have the authority to make the offer, and that Plaintiff relied on Campbell's promise to her detriment by abandoning her outside job search.

Plaintiff's objection is without merit.  "The necessary elements of a contract are an offer, acceptance and valuable consideration."  See Plantation A.D., LLC v. Gerald Builders of Conway, Inc., 687 S.E.2d 714, 718 (S.C. Ct. App. 2009).  "In order for a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement."  See Davis v. Greenwood School District 50, 620 S.E.2d 65, 67 (2005).  Employment for an indefinite period of time is terminable at-will for any reason and at any time.  White v. Roche Biomedical Labs, Inc., 807 F. Supp. 1212, 1215 (D.S.C. 1992).  Indefinite statements of steady employment are insufficient to constitute an offer for a definite time period

that alters at-will employment status.  See Prescott v. Farmers Tele. Co-op., 516 S.E.2d 923 (S.C. 1999).

The court agrees with the Magistrate Judge's finding that Plaintiff has not shown that she was made an offer; that she accepted the offer; or that there was mutual assent as required by South Carolina law.  Plaintiff maintained at at-will employment status with Defendant.  Campbell's promise of continued employment did not clearly specify a salary amount or duration, as Plaintiff's own deposition testimony reveals.  Plaintiff admitted that after Campbell told her that he could only secure $16.00 per hour for the new position, she had asked Campbell to see what he could do about securing her current salary level.  Plaintiff indicated that she did not know whether or not he investigated further or what response he may have received from human resources.  Accordingly, any promise made by Campbell as to future employment did not contain sufficiently specific terms to qualify as an offer that could alter Plaintiff's at-will employment status.  Furthermore, a contract requires mutual assent and there is no evidence that Plaintiff and Campbell had ever reached a point where Plaintiff had agreed to accept a specific salary level offered by Defendant.  Accordingly, the court finds that Plaintiff has no valid breach of contract claims.

Lastly, Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to establish a negligent supervision claim.  Plaintiff alleges that several witness statements from former employees establish that Campbell made promises to Plaintiff with regard to being placed within his Telesales team.  Plaintiff contends that Defendant also knew Campbell was making employment promises to Plaintiff simply by the fact that Campbell is employed by Defendant and was given the express authority to interview and hire employees in order to fill vacant positions in the Telesales Department.  Plaintiff contends that Defendant took no steps to prevent

or control Campbell from making promises of employment to Plaintiff.  Furthermore, Plaintiff states that Campbell was instructed by his supervisor to offer the Telesales position to Plaintiff at the same rate of pay that another employee was offered and that Campbell did not follow the instruction.

Plaintiff's objection is without merit.  Under South Carolina law, an employer may be liable for negligent supervision of its employee when the employee intentionally harms another if: 1) the employee is upon the premises of the Defendant; 2) the employer knows or has reason to know that he [the employer] has the ability to control his employee and 3) the employer knows or should know of the necessity and opportunity for exercising such control.  Degenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992).

The court agrees with the Magistrate Judge's finding that Plaintiff sets forth no evidence that Defendant knew or should have known that they needed to control and prevent Defendant from making promises of employment to Plaintiff.  There is no evidence that Defendant knew or was informed that Campbell was making promises of employment to Plaintiff until Plaintiff spoke with Defendant on May 29, 2008, several weeks after Plaintiff's employment with Defendant had terminated.  Furthermore, Defendant's employees, including Plaintiff, sign a document indicating that they are aware that only certain employees, not including Campbell, have the ability to enter into an employment contract with them that would alter their at-will status.  Thus, Defendant had no reason to know that Plaintiff was entering into such an alleged contract with Campbell.  Plaintiff's argument that several non-managerial employees overhead Campbell's promise does not demonstrate that Defendant knew or should have known that Campbell made such a promise.  Furthermore, Plaintiff has set forth no evidence that Campbell intended to harm Plaintiff.  Plaintiff admits that she had no reason to doubt that Campbell

11

initially believed he could obtain a lateral salary transfer for her.  Furthermore, Plaintiff does not allege that Campbell was lying to her regarding his opinion that he could obtain a lateral salary transfer.  Accordingly, there is no evidence in the record to demonstrate intentional harm by Campbell, so as to justify a negligent supervision claim.

## Conclusion

After a thorough review of the Report and Recommendation, the Plaintiff's objections, Defendant's reply to the objections, the record in its entirety, and the applicable law, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.  Accordingly, Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

March 30, 2012
Columbia, South Carolina